Case 7:11-cv-00153-JCT  Document 14  Filed 09/06/11  Page 1 of 9

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 06 2011

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NATHANIEL T. RIVERS )<br>**Petitioner,** )<br>)<br>v. )<br>)<br>DIRECTOR, DEPARTMENT OF )<br>CORRECTIONS, )<br>**Respondent.** )<br>) | Civil Action No. 7:11-CV-00153<br><br>**MEMORANDUM OPINION**<br><br>By: Hon. James C. Turk<br>Senior United States District Judge |

Nathaniel Rivers, an inmate of the Virginia Department of Corrections and proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Rivers asserts that his rights under the 5th, 6th, and 14th Amendments to the United States Constitution were violated because (1) petitioner was denied effective assistance of counsel, and (2) petitioner's guilty plea was not knowingly and voluntarily made. Respondent, the Director of the Virginia Department of Corrections, filed a motion to dismiss (Dkt. No. 7) on May 2, 2011, and the Clerk of Court sent petitioner a Roseboro notice on that day advising petitioner of his right to submit further memoranda or evidence. The petitioner has not submitted further memoranda or evidence, and the matter is ripe for disposition. Upon review of the parties' arguments and the case record, the Court finds that the Respondent's motion to dismiss (Dkt. No. 7) must be **GRANTED**, and Rivers' petition for § 2254 relief must be **DENIED**.

## I. Factual Background and Procedural History

On December 24, 2007, the petitioner and Windy Dawn Hamlett traveled to the Days Inn in Augusta County, Virginia. Rivers entered the hotel to examine the surroundings in preparation for the robbery. Hamlett entered the hotel, presented a firearm, demanded money, and took approximately $100 from the clerk. Rivers served as a lookout during the robbery and split the proceeds of the robbery. Later that night, Rivers and his coconspirators used a firearm

to rob the Hampton Inn. Rivers served as a lookout for that robbery. Petitioner Rivers made a full confession of his role in the robberies, and the motel clerks corroborated his confession.

On April 23, 2008, Petitioner, pursuant to his written guilty plea, was convicted of two counts of robbery and two counts of participation in a criminal street gang in the commission of a robbery. In accordance with his plea, two counts of use of a firearm in commission of a felony were nolle prosequi. At the guilty plea hearing, petitioner was arraigned on the four charges to which he pled guilty, and he was placed under oath before answering questions about his plea. Guilty Plea Transcript (hereinafter "GP"), 3-4. Petitioner testified that he understood the charges and had discussed them with his attorney. He testified that he had discussed plea options with his attorney and, following that discussion, he had decided for himself to plead guilty. GP, 6. No one had threatened or forced him to plead guilty. GP, 7. He told the court that he was pleading guilty because he was in fact guilty of the charged offenses. GP, 6.

Petitioner acknowledged that the court would determine his sentence and that he faced two life sentences for the robberies. GP, 8. Petitioner also stated under oath that he was satisfied with the services of his attorney. GP, 8. The trial court found that petitioner entered his guilty plea knowingly and voluntarily. GP, 10.

At the sentencing hearing on March 5, 2009, petitioner's attorney presented evidence from petitioner's former juvenile probation officer. The officer testified extensively about petitioner's social history, including the fact that petitioner had a very difficult upbringing, had ADHD, and joined a gang at age 13. Sentencing Transcript (hereinafter "Sent."), 25. She also noted that petitioner earned his high school diploma while living at a halfway house and opined that petitioner was "very redeemable." Sent., 28. Petitioner's counsel subpoenaed petitioner's great aunt, who raised him, but she was not able to attend the sentencing. Sent., 31.

The prosecutor advised the court that the Commonwealth was able to successfully prosecute other defendants with the aid of petitioner's testimony. Sent., 41. The prosecutor recommended that the court depart downward from the guidelines and sentence petitioner to an active sentence of 16 years. Petitioner's counsel recommended that the court sentence him to an active sentence of 8 years. Sent., 50. The court then imposed a sentence of 60 years, suspended after petitioner served 22 years. Sent., 22. Counsel subsequently filed a motion to modify the sentence. The court held a hearing on the motion and resentenced petitioner to an active sentence of 19 years.

Petitioner, by new appellate counsel, appealed the final judgment to the Court of Appeals of Virginia, arguing that the trial court's sentence was abuse of discretion. The court denied the appeal on November 4, 2009. Petitioner then appealed to the Supreme Court of Virginia, and the Supreme Court refused the appeal by order dated March 19, 2010. The petitioner timely filed a state habeas corpus petition in the Supreme Court of Virginia, and the Supreme Court denied and dismissed the petition on January 6, 2011. Petitioner timely filed a habeas corpus petition in this Court on March 28, 2011.

Petitioner raises four claims in his habeas petition. First, he claims that his counsel was ineffective because she failed to request a mental evaluation. Second, petitioner alleges that his guilty plea was not voluntarily and intelligently made because his counsel was ineffective. Third, he claims that counsel was ineffective because she failed to inform petitioner that by pleading guilty, he waived his right to appeal to the Supreme Court. Fourth, petitioner contends that counsel was ineffective because she failed to provide mitigating information to the court.

## II. Exhaustion

A federal court may not grant habeas relief for unexhausted state claims not presented to the highest state court. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

3

To meet the exhaustion requirement, a petitioner must have presented "both the operative facts and the controlling legal principles" to the reviewing state court. Kasi v. Angelone, 300 F.3d 487, 501–02 (4th Cir. 2002). Additional facts not presented to the state court may not be considered in a § 2254 review. Cullen v. Pinholster, 563 U.S. ___, 131 S. Ct. 1388, 1400 (2011).

Rivers presented all four claims in his state habeas petition, so he has exhausted his claims. However, he has provided new factual support for some of his federal habeas claims, and these facts were not provided to the Supreme Court of Virginia with his state habeas claims. Therefore, this Court will only consider the facts presented to the state courts and not the newly presented facts. Pinholster, 563 U.S. ___, 131 S. Ct. at 1400 (concluding that a "federal habeas petitioner [must rely] on the record that was before the state court").

### III. Standard of Review

Federal courts will entertain a defendant's writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). However, when reviewing the writ, federal courts are required "to accord state-court factual findings a presumption of correctness." Hernandez v. New York, 500 U.S. 352, 366 (1991). This presumption "appl[ies] with equal force to [a federal court's] review of a state trial court's findings of fact made in connection with a federal constitutional claim," except for exceptional circumstances. Id.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief for any claim "that was adjudicated on the merits in State court proceedings," unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)–

4

(2). The Fourth Circuit accords the "contrary to" and "unreasonable application" clauses independent meaning. See Powell v. Kelly, 562 F.3d 656, 664 (4th Cir. 2009). A state court decision is "contrary to" clearly established federal law if the state court's decision (1) contravenes United States Supreme Court precedent as a matter of law or (2) contravenes United States Supreme Court precedent with materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405 (2000). If the state court (1) unreasonably applies the correct legal rule to the facts, (2) extends a federal legal principle in cases where it should not be applied, or (3) refuses to extend a federal legal principle to cases where it should be applied, then a state court decision is an "unreasonable application" of clearly established federal law. Id. at 407.

## IV. Analysis

Each of Rivers' claims allege that he was deprived of the constitutional right to effective assistance of counsel. In order to challenge a sentence successfully on the basis of ineffective assistance of counsel, Rivers must satisfy the test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court held that a finding of ineffective assistance of counsel requires a two-prong showing, and a habeas petitioner bears the burden of persuasion for both prongs. Id. at 687.

First, Rivers must show that the attorney's performance "fell below an objective standard of reasonableness," where reasonableness is determined under the "prevailing professional norms." Id. at 688. In assessing an attorney's performance, a court must be highly deferential to tactical decisions, and the court must filter from its analysis the "distorting effects of hindsight." Id. at 689. Moreover, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

5

Second, Rivers must show that prejudice resulted from counsel's deficient performance. Id. at 692. To establish prejudice, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id. at 694. Where a petitioner has pled guilty, in order to satisfy the prejudice requirement, he must show that "there is a reasonable probability that but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Failure to satisfy either prong is fatal to a petitioner's ineffective assistance of counsel claim.

### A. Failure to Request a Mental Evaluation

Rivers claims that counsel was ineffective for failing to request a mental evaluation to determine if Rivers was competent to stand trial. Rivers contends that because counsel knew that Rivers suffered from Attention Deficit Disorder and other learning disabilities, counsel should have requested a mental evaluation. The Supreme Court of Virginia rejected this claim.

The state court's ruling was not contrary to or an unreasonable application of federal law. For a person to be deemed incompetent to stand trial, "evidence must indicate a present inability to assist counsel or understand the charges." Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000). The evidence fails to meet this standard. Petitioner has presented no evidence that shows his counsel should have asked for a mental evaluation, and petitioner never alleges that he asked for a mental evaluation during the course of counsel's representation.

To the contrary, counsel in a sworn affidavit avers that Rivers fully understood the charges against him and actively assisted his defense. Counsel's Affidavit (hereinafter Affidavit), 2. Counsel also notes that petitioner testified very clearly and accurately against his codefendants at their trials, further evincing that petitioner was competent to stand trial.

6

Affidavit, 3. Furthermore, Rivers testified under oath that he understood the charges against him, GP, 6, and that he was satisfied by the services rendered by his attorney. GP, 8. The truth of sworn statements made in court is conclusively presumed absent extraordinary circumstances. United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005). The state court did not unreasonably interpret federal law, as counsel's performance was not ineffective under the standard in Strickland.

### B. Guilty Plea Was Made Voluntarily and Intelligently

Rivers alleges that due to counsel's ineffective assistance, his guilty pleas were not voluntarily and intelligently entered. Petitioner alleges that counsel advised him that he would likely receive a five year sentence if he pled guilty. Petitioner further argues that he could not have intelligently pled guilty because at the time he committed the crime, he believed that his actions, i.e. serving as a lookout for an armed robbery, did not constitute a violation of the law.

Petitioner's sworn testimony in court belies his current claim. At the guilty plea hearing, petitioner testified that his attorney had thoroughly discussed the charges and the possible penalties and that no one had made any threats or promises to encourage him to plead guilty. He also indicated that he understood the charges against him. Those sworn statements are presumed to be true. Lemaster, 403 F.3d at 221. Moreover, petitioner was advised that the court had discretion to sentence him to up to two life sentences. Also, counsel denies advising petitioner that he would only receive a five-year sentence. Finally, Rivers' dubious belief that he did not know that he was breaking the law at the time he participated in armed robbery is irrelevant because "ignorance of the law generally is no defense to a criminal charge." Bryan v. Unites States, 524 U.S. 184, 195 (1998). The state court's finding that petitioner satisfied neither prong of Strickland in claiming that deficient counsel caused him to involuntarily and unintelligently plead guilty was not contrary to or an unreasonable interpretation of federal law.

7

### C. Failure to Advise Petitioner he Waived his Right to Appeal

Rivers claims that his counsel was ineffective because she did not advise petitioner that he gave up his right to appeal to the Supreme Court by pleading guilty. The state court rejected this claim because Rivers did, in fact, appeal his sentence to the Court of Appeals of Virginia, and then, to the Supreme Court of Virginia. Rivers claims that he believed his Motion for Reconsideration was an appeal and that he was precluded from filing an actual. This argument disregards the fact that after the sentencing judge ruled on his motion for reconsideration, Rivers did appeal, even though the appeal was not ultimately successful. Because there is no factual basis for this claim, the state court's disposition of this claim was not contrary to or an unreasonable interpretation of federal law.

### D. Failure to Provide Mitigating Evidence at Sentencing

Rivers alleges that his counsel was ineffective for failing to investigate mitigating circumstances and present such evidence at his sentencing hearing. Rivers does not articulate specifically what evidence counsel would have been able to discover or present, other than alleging that a mental evaluation would have uncovered some evidence. However, Rivers presents no evidence that a mental evaluation would have uncovered relevant evidence. To the contrary, Rivers' counsel frequently met with Rivers and determined that he did not have mental disabilities that might constitute mitigating circumstances. Affidavit, 2. Counsel had previously represented several clients with severe mental problems and had requested mental evaluations for them. She was familiar with mental illness and saw no reason that Rivers needed to be evaluated. Affidavit, 2. Furthermore, Rivers never asked for a mental evaluation.

Counsel made a professional strategic choice to present certain mitigating evidence at Rivers' sentencing hearing. Counsel subpoenaed Rivers' juvenile probation officer from Norfolk, who testified at the sentencing hearing. She testified that Rivers had been raised by his

8

great aunt, who abused drugs, and that his childhood was very unstable. She also testified that he was very redeemable. Counsel also subpoenaed petitioner's great aunt, and petitioner's mother was present at sentencing. Petitioner testified at his sentencing hearing about the many hardships he had faced in life.

First, counsel presented more than sufficient mitigating evidence to meet the performance standard of <u>Strickland</u>. She subpoenaed and presented witnesses, who testified on petitioner's behalf. Second, there was no objective reason for counsel to request a mental evaluation to attempt to discover mitigating evidence. Finally, Rivers could not have been prejudiced by counsel's performance because he points to no relevant, additional evidence that she could have presented to the court. For these reasons the state court's finding that counsel was not deficient and Rivers was not prejudiced was not unreasonable.

## V. Conclusion

The state court properly found Rivers' four ineffective assistance of counsel claims to be unmeritorious. Because the state court's findings were not an unreasonable interpretation of or contrary to federal law, the Court must dismiss all of Rivers' § 2254 claims.

ENTER: This 6th day of September, 2011.

*/s/ James C. Turk*
Senior United States District Judge